Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 7948 | **DATE** | 4/5/2004 |
| **CASE TITLE** | Grand Vehicle Works Holding v. Thomas Frey and Richard Fish | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendants' motion to dismiss for lack of personal jurisdiction is denied. Enter memorandum opinion and order.

(11) X [For further detail see order attached to) the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | **Document Number** |
| | No notices required. | number of notices |
| | Notices mailed by judge's staff. | APR 06 2004 |
| | Notified counsel by telephone. | date docketed |
| ✓ | Docketing to mail notices. | |
| | Mail AO 450 form. | docketing deputy initials |
| | Copy to judge/magistrate judge. | |
| | | date mailed notice |
| SLB | courtroom deputy's initials | |
| | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**
APR 0 6 2004

| | |
|---|---|
| GRAND VEHICLE WORKS HOLDINGS, CORPORATION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| THOMAS FREY and RICHARD FISH, | ) ) ) |
| Defendants. | ) ) ) |

No. 03 C 7948

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Grand Vehicle Works Holdings Corporation ("Grand Vehicle") filed a seven count complaint against Defendants Thomas Frey ("Frey") and Richard Fish ("Fish") (collectively, "Defendants") alleging breach of contract, tortious interference with contractual relations, breach of fiduciary duty, and unfair competition. Defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. For the reasons set forth below, Defendants' motion is denied.

## BACKGROUND

Grand Vehicle is a Delaware limited liability corporation with its principal place of business in Highland Park, Illinois. (R. 1-1, Compl. ¶ 2.) Grand Vehicle develops, markets, and sells products and services related to the motor home industry. (*Id.* ¶ 8.) Workhorse Custom Chassis ("Workhorse") is a subsidiary of Grand Vehicle and has its principal place of business in Union City, Indiana. (*Id.*) Workhorse manufactures strip chassis for the motor home industry. (*Id.*)



Defendants, both residents of Ohio, are former Workhorse employees who worked in Workhorse's Union City, Indiana facility. (*Id.* ¶¶ 3-4.) Frey served as President of Workhorse from June 1999 until January 2003, when he quit Workhorse to work for Universal Trailer Corporation ("Universal Trailer") in Cincinnati, Ohio. (*Id.* ¶ 10.) Universal Trailer manufactures and sells trailers and motor homes. (*Id.* ¶ 21.) Fish served as Workhorse's Vice President of Marketing for Recreational Vehicles from October 2000 until August 2003, when he also quit Workhorse to work for Universal Trailer. (*Id.* ¶ 11.)

Anthony Monda served as Workhorse's Director of Marketing from May 1999 until he left Workhorse in September 2003 to join Frey and Fish at Universal Trailer. (*Id.* ¶ 25.) While the majority of Workhorse employees were based in Union City, Indiana, Monda and several other Workhorse employees worked in Highland Park, Illinois. (Andrew Taitz Aff. ¶ 2.)

In May 2001, Grand Vehicle offered stock options to Defendants and other key employees. (R. 1-1, Compl. ¶ 16.) Defendants accepted the offer and agreed to be bound by the Company's Stock Option Agreement. (*Id.*) As a condition of their receipt of the stock options, Frey and Fish each executed a Confidentiality and Non-Compete Agreement (the "Frey Non-Compete Agreement" and the "Fish Non-Compete Agreement associated with the Stock Option Agreement"). (*Id.* ¶ 17.) Pursuant to these agreements, Defendants agreed to certain post-employment restrictions in the event that they left Workhorse to work for a competitor.[1] (*Id.* ¶ 1.)

In March 2002, Neville Dowell, a Grand Vehicle shareholder, agreed to sell his Grand

---

[1] The Frey Non-Compete Agreement and the Fish Non-Compete Agreement associated with the Stock Option Agreement are identical in all relevant respects.

Vehicle stock to Fish. (*Id.* ¶ 18.) To consummate the sale, Fish and Dowell executed a Share Purchase Agreement. (*Id.*) Fish needed Grand Vehicle's consent before he could purchase the stock from Dowell. (*Id.*) As a condition of Grand Vehicle's consent, Grand Vehicle required Fish to execute an additional Confidentiality and Non-Compete Agreement (the "Fish Non-Compete Agreement associated with the Share Purchase Agreement") contemporaneously with the Share Purchase Agreement. (*Id.*) The Share Purchase Agreement contained a forum selection clause in which Fish agreed to submit to personal jurisdiction in Illinois for any disputes arising out of that agreement. (Share Purchase Agreement ¶ 6(c).)

Grand Vehicle sued Defendants for a variety of claims arising out of the Frey Non-Compete Agreement and both Fish Non-Compete Agreements. Defendants argue that the Court lacks personal jurisdiction over them. This is the issue currently before the Court.

## LEGAL STANDARD

When a defendant files a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of personal jurisdiction over the defendant. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). The plaintiff, however, "need only make out a *prima facie* case of personal jurisdiction." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2002). Accordingly, in determining whether personal jurisdiction exists, "[t]he allegations in the complaint are to be taken as true unless controverted by the defendants' affidavits; and any conflicts in the affidavits are to be resolved in [the plaintiff's] favor." *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987). Because each count of a complaint is ordinarily a separate statement of a claim, the plaintiff must establish that personal jurisdiction exists as to each count. *Beveridge v. Mid-West Mgmt., Inc.*, 78 F. Supp. 2d 739, 744 (N.D. Ill.

3

1999).

An Illinois federal court has personal jurisdiction over a nonresident party "only if an Illinois state court could have such jurisdiction." *RAR*, 107 F.3d at 1275. The Illinois long-arm statute permits the Court to exercise personal jurisdiction over a party to the extent allowed under federal due process.[2] *See* 735 Ill. Comp. Stat. 5/2-209(c); *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 945 (7th Cir. 1992). In addition, the Court must ensure that the due process guarantees of the Illinois Constitution are satisfied before exercising personal jurisdiction over a nonresident defendant. *RAR*, 107 F.3d at 1276; *Jamik, Inc. v. Days Inn of Mount Laurel*, 74 F. Supp. 2d 818, 821 (N.D. Ill. 1999). Because the Seventh Circuit has held that "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction," the Court will address a single due process inquiry. *Hyatt*, 302 F.3d at 715; *see also Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1202 (7th Cir. 1997); *Klump v. Duffus*, 71 F.3d 1368, 1371 n.4 (7th Cir. 1995).

Federal due process requires that the defendant have "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *RAR*, 107 F.3d at 1277 (*quoting International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945)). The minimum contacts standard varies depending on whether the plaintiff asserts general or specific jurisdiction. This case involves specific

---

[2] The Illinois long-arm statute enumerates fourteen acts by which a nonresident defendant may submit to personal jurisdiction. 735 Ill. Comp. Stat. 5/2-209(a). In 1989, the Illinois long-arm statute was amended to include section 209(c), a catch-all provision that empowers Illinois state courts to exercise jurisdiction "on any other basis now or hereafter permitted" by the state and federal constitutions. 735 Ill. Comp. Stat. 5/2-209(c).

4

jurisdiction.[3]

Specific jurisdiction exists in cases "arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n.8, 104 S. Ct. 1868, 1872 n.8 (1984). In specific jurisdiction cases, a defendant's minimum contacts with Illinois must "result from the actions by the defendant himself that create a substantial connection with the forum state." *Burger King v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 2184 (1985) (citation omitted). The defendant's connection to the State must be substantial enough that "he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 567 (1980).

## ANALYSIS

Because specific jurisdiction requires that the lawsuit "arise out of" or "be related to" a defendant's minimum contacts with the forum state, *RAR*, 107 F.3d at 1277, the Court must determine whether this lawsuit arises out of Defendants' contacts with Illinois in a manner sufficient to warrant exercising personal jurisdiction over Defendants. The Court concludes that it does.

Grand Vehicle argues that the Court has personal jurisdiction over Defendants under at least four subsections of the Illinois long-arm statute. The statute provides in part:

> [a]ny person, whether or not a citizen or resident of this State, who in

---

[3] Grand Vehicle does not specify whether it seeks to establish general or specific jurisdiction. Both parties, however, limit their arguments to the question whether specific jurisdiction exists. Moreover, given the facts surrounding the contracts and Defendants' activities, Grand Vehicle has not established that Defendants had "continuous and systematic general business contacts" with the forum sufficient to subject them to general jurisdiction. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S. Ct. 1868, 1873 (1984).

5

> person or through an agent does any of the acts hereinafter
> enumerated, thereby submits such person . . . to the jurisdiction of the
> courts of this State as to any cause of action arising from the doing of
> any of the following such acts: (1) The transaction of any business
> within this State; (2) The commission of a tortious act within this
> State; . . . (7) The making or performance of any contract or promise
> substantially connected with this State; . . . [or] (11) The breach of
> any fiduciary duty within this State.

735 Ill. Comp. Stat. 5/2-209(a).

The parties focus on whether Defendants' contacts with Illinois provide a sufficient basis for jurisdiction under one of the four above-mentioned enumerated acts. The catch-all provision of section (c) of the Illinois long-arm statute,[4] however, allows the Court to find personal jurisdiction without reference to any of the specific acts enumerated in section (a). *See Mattsson v. Gerry Wood Prods. Co.*, No. 95 C 2314, 1996 WL 147921, at *7-8 (N.D. Ill. Mar. 28, 1996); *Rao Design Eng'g, Inc. v. Wisconsin Engraving Co., Inc.*, No. 96 C 3945, 1996 WL 535328, at *3-4 (N.D. Ill. Sept. 18, 1996). Accordingly, the Court need not restrict its analysis to the specific enumerated bases of the long-arm statute.

Nonetheless, the enumerated bases provide guidance regarding the quality and nature of contacts that are sufficient to satisfy due process. It is therefore instructive to analyze Defendants' Illinois contacts in light of the specific bases for personal jurisdiction enumerated in subsection (a) of the Illinois long-arm statute. *See Mattsson*, 1996 WL 147921, at *7-8. In this case, the question whether Defendants' contacts are sufficient to establish personal jurisdiction under either the "tortious act" or "contractual relations" standard of the Illinois long-arm statute

---

[4] Section 209(c) provides that "a court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 Ill. Comp. Stat. 5/2-209(c).

provides guidance as to whether Defendants' activities constitute minimum contacts sufficient to satisfy federal due process guarantees. As noted, Grand Vehicle must establish personal jurisdiction as to each count.[5] As to Counts IV-VII, personal jurisdiction exists in light of the "tortious act" standard. As to Counts I-III, personal jurisdiction exists in light of the "contractual relations" standard.

## I. This Court Has Personal Jurisdiction Over Defendants As To Counts IV-VII Because Grand Vehicle Alleged That Defendants Committed A Tortious Act Within Illinois

### A. Grand Vehicle Established Personal Jurisdiction As To The Tortious Interference With Contractual Relations Counts

Tortious interference with contractual relations may subject a nonresident to personal jurisdiction in Illinois under the state's long-arm statute. 735 Ill. Comp. Stat. § 5/2-209(a)(2); *Cleary v. Sterenbuch*, No. 01 C 5109, 2001 WL 1035285, at *2 (N.D. Ill. Sept. 10, 2001). A nonresident may be subject to personal jurisdiction in Illinois even if the defendant committed the allegedly tortious acts elsewhere. *See Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1202-3 (7th Cir. 1997) ("the state in which the injury (and therefore the tort) occurs may require the wrongdoer to answer for its deeds even if events were put in train outside its borders"); *ISI Int'l, Inc. v. Borden Ladner Gervais, LLP*, 256 F.3d 548, 551 (7th Cir. 2001).

---

[5] In Count I, Grand Vehicle alleges that Frey breached the Frey Non-Compete Agreement. In Count II, Grand Vehicle alleges that Fish breached the Fish Non-Compete Agreement associated with the Stock Option Agreement. In Count III, Grand Vehicle alleges that Fish breached the Fish Non-Compete Agreement associated with the Share Purchase Agreement. In Count IV, Grand Vehicle alleges that Frey tortiously interfered with Grand Vehicle's contractual relations with Fish and Monda. In Count V, Grand Vehicle alleges that Fish tortiously interfered with Grand Vehicle's contractual relations with Monda. In Count VI, Grand Vehicle alleges that Frey and Fish breached their fiduciary duties to Grand Vehicle. In Count VII, Grand Vehicle alleges that Frey and Fish engaged in unfair competition against Grand Vehicle.

In Counts IV and V, Grand Vehicle alleges that Frey and Fish tortiously interfered with Grand Vehicle's contractual relations with Tony Monda by improperly influencing him to terminate his employment contract with Grand Vehicle.[6] The parties dispute the events leading to Monda's resignation. Fish's affidavit states that Monda called Fish and asked Fish to "please take me with you." Fish further states that Monda called Fish while Monda was at his home in Indiana and Fish was on vacation in North Carolina. These statements conflict with Grand Vehicle CEO Andrew Taitz's affidavit and the complaint's allegations that Fish called Monda at Monda's Illinois office. While the parties dispute the events leading to Monda's resignation and subsequent employment at Universal Trailer, the Court resolves such disputes in Grand Vehicle's favor. *Hyatt*, 302 F.3d at 712-13.

The essence of Grand Vehicle's claim is that Defendants' tortious conduct led to the termination of Monda's employment contract, which injured Grand Vehicle in Illinois. Defendants contend that this injury is too attenuated because Workhorse—Grand Vehicle's subsidiary—suffered the injury. Because Workhorse's principal place of business is in Indiana, Defendants argue, there was no injury in Illinois. Defendants' argument fails. First, Taitz's affidavit states that Workhorse has significant business operations in Highland Park, and that several key Workhorse employees are located there or maintain offices there, including the CEO of Grand Vehicle and Workhorse, the current president of Workhorse, and several other sales and marketing employees. (Taitz Aff. ¶ 2.) When Workhorse lost Monda, its Illinois-based Director

---

[6] Grand Vehicle further alleges in Count IV that Frey improperly encouraged Fish to terminate his employment contract with Grand Vehicle. The Court focuses on Grand Vehicle's tortious interference claim with respect to Monda, however, because that allegation is sufficient to confer personal jurisdiction on both Defendants.

8

of Marketing, it suffered injury not only at its headquarters in Indiana but also at its Illinois operations in Highland Park, Illinois. Second, Grand Vehicle explicitly contracted with Defendants to avoid this very injury. The Frey Non-Compete Agreement and both Fish Non-Compete Agreements contained the following non-solicitation provision:

> <u>Non-Solicitation</u>: During the Term of Non-Competition, Employee will not . . . directly or indirectly, recruit or otherwise solicit or induce any employee . . . of the Company to terminated its employment or arrangement with the Company . . . or establish any relationship with the Employee or any of his affiliates for any business purpose deemed competitive with the business of the Company.

(Agreements, ¶ 3.) Thus, Defendants' allegedly tortious conduct injured not only Workhorse's Indiana headquarters, but also Workhorse's Illinois operations and Grand Vehicle's Illinois headquarters.

### B. Grand Vehicle Established Personal Jurisdiction As To The Breach Of Fiduciary Duty And Unfair Competition Counts

For purposes of the Illinois long-arm statute, Illinois courts construe the phrase "tortious act" broadly to encompass any act that involves a breach of a duty owed to another and makes the person committing the act liable to the other for damages. *Vlasak v. Rapid Collection Sys., Inc.*, 962 F. Supp. 1096, 1100 (N.D. Ill. 1997); *see also Estate of Wrigley*, 104 Ill. App. 3d 1008, 433 N.E.2d 995, 1004 (1982).

In Count VI, Grand Vehicle alleges that Frey and Fish breached their fiduciary duties to Grand Vehicle. Defendants argue that Grand Vehicle cannot establish a breach of fiduciary duty because Defendants owed no duty to Grand Vehicle after they terminated their employment with Grand Vehicle. But the questions whether Defendants actually had a fiduciary duty to Grand Vehicle and whether they breached that duty are not before the Court. Grand Vehicle established

a *prima facie* case of personal jurisdiction as to Count VI by alleging that Defendants had a fiduciary duty to Grand Vehicle and that they breached that duty.

In Count VII, Grand Vehicle alleges that Frey and Fish engaged in unfair competition against Grand Vehicle. Because Defendants do not dispute whether personal jurisdiction exists as to this count, they waived the argument that personal jurisdiction is improper as to Count VII. In any event, Grand Vehicle's action for unfair competition clearly arises directly out of Defendants' breach of fiduciary duty and tortious interference with contractual relations. *See Magnum Feeders, Inc. v. Bloedorn*, No. 95 C 2012, 1995 WL 743747, at *3 (N.D. Ill. Dec. 12, 1995).

Accordingly, Grand Vehicle has established that the Court has personal jurisdiction over Defendants by virtue of the injury that occurred in Illinois as a result of Defendants' allegedly tortious conduct.

## II. This Court Has Personal Jurisdiction Over Defendants As To Counts I-III On The Basis Of Defendants' Contracts And Business Transactions in Illinois

In a breach of contract case, "it is only the dealings between the parties in regard to the disputed contract that are relevant to minimum contacts analysis." *RAR*, 107 F.3d at 1278. It is well-settled that a nonresident defendant does not subject itself to personal jurisdiction in Illinois simply by entering into a contract with an Illinois resident. *Burger King*, 471 U.S. at 478, 105 S. Ct. at 2185. Instead, courts consider a number of factors to determine the question of personal jurisdiction on the basis of contractual relations. These factors include: who initiated the transaction, where the negotiations were conducted, where the parties executed the contract, and where the defendant would have performed the contract. *See RAR*, 107 F.3d at 1277. Applying

these standards to this case, the Court finds that Defendants are subject to personal jurisdiction in Illinois.

The key factors establishing jurisdiction are that the parties negotiated the contracts at least in part in Illinois and that Defendants agreed to perform the contracts at least in part in Illinois.

### A. Defendants Do Not Dispute That The Parties Negotiated The Agreements At Least In Part In Illinois

#### 1. The Frey And Fish Stock Option Agreements

Grand Vehicle alleges that the parties negotiated the Frey Non-Compete Agreement and the Fish Non-Compete Agreement associated with the Stock Option Agreement at least in part in Illinois. Defendants frequently traveled to the Highland Park office to attend meetings and perform other management duties. (Taitz Aff. ¶¶ 5-6.) During at least some of those business trips, Defendants discussed the terms of the Frey and Fish Stock Option Agreements and the Fish Stock Purchase Agreement with Grand Vehicle in Highland Park, Illinois. (Taitz Supplemental Aff. ¶ 3.)

#### 2. The Fish Share Purchase Agreement

Similarly, Grand Vehicle alleges that the parties negotiated the Fish Non-Compete Agreement associated with the Share Purchase Agreement at least in part in Illinois. Defendants argue that other negotiations took place outside of Illinois, but they do not dispute that Fish and Taitz had several conversations in Highland Park, Illinois regarding Fish's purchase of Dowell's shares. (Taitz Supplemental Aff. ¶ 8.)[7]

---

[7] Grand Vehicle further argues that the forum selection clause in the Share Purchase Agreement provides an independent basis for this Court to exercise personal jurisdiction over

11

### B. The Fiduciary Shield Doctrine Does Not Apply

For the first time in their reply brief, Defendants argue that the Court cannot consider Defendants' Illinois contacts in determining personal jurisdiction because the fiduciary shield doctrine protects them. Arguments raised for the first time on reply are waived. *Montalvo v. Park Ridge Police Dept.*, 170 F. Supp. 2d 800, 803 (N.D. Ill. 2001). Accordingly, Defendants cannot rely on the fiduciary shield doctrine.

Even if the Court were to consider this argument, it is unavailing because the fiduciary shield doctrine does not apply in light of the personal business exception. The fiduciary shield doctrine provides that nonresidents who enter a state solely as a fiduciary for another may not be sued in that state. *ISI Int'l*, 256 F.3d at 550. Two exceptions to this doctrine exist: "(1) the shield is removed if the individual's personal interests motivated his actions, and (2) the shield generally does not apply when the individual's actions are discretionary." *Consumer Benefit Servs., Inc. v. Encore Mktg. Int'l, Inc.*, No. 01 C 6985, 2002 WL 31427021, at *3 (N.D. Ill. Oct. 30, 2002). The "fiduciary shield is discretionary or equitable, rather than an absolute entitlement," and is lost "if the employee's personal interest motivated his actions." *Id.*

The fiduciary shield doctrine does not apply because Defendants' personal interests motivated their actions. Defendants argue that they never traveled to Highland Park to "specifically discuss the Stock Option Agreements," and that "[t]o the extent that Taitz and Defendants discussed the Stock Option Agreements while in Illinois, such discussions were

---

Fish as to Count III. Defendants argue that the forum selection clause does not apply because the Non-Compete Agreement, rather than the Share Purchase Agreement, is at issue in this case, and the Non-Compete Agreement does not have a forum selection clause. The Court need not resolve this issue, however, because Grand Vehicle has established that the Court has personal jurisdiction over Fish as to Count III on the basis of Fish's contractual relations with Illinois.

12

secondary to other [Grand Vehicle] business topics." (R. 18-1, Defs.' Reply Mem. at 5 n.4.) Grand Vehicle alleges that Defendants entered into the agreements for their own personal benefit. The Court agrees. Defendants did not enter into the agreements on behalf of Grand Vehicle. Rather, Defendants negotiated *against* Grand Vehicle to secure terms that were most favorable to Defendants personally.[8] "[T]he shield is withdrawn if the agent was acting also (or instead) on his own behalf to serve his personal interests." *Budget Rent A Car Corp. v. Crescent Ace Hardware*, No. 03 C 0930, 2003 WL 21673932, at *4 n.6 (N.D. Ill. July 16, 2003) (citation omitted).

### C. Grand Vehicle Has Established That Defendants Agreed To At Least Partially Perform The Contracts In Illinois

Grand Vehicle alleges that Defendants agreed to perform at least part of their obligations under the agreements in Illinois. As noted, all of the agreements at issue included a "Non-Solicitation" clause. Grand Vehicle clearly was concerned that Defendants might lure away its key employees—from either its Indiana or Illinois office—to join Defendants in the event that they left Grand Vehicle to work for a competitor. Defendants agreed to refrain from soliciting Grand Vehicle employees based in Illinois, such as Monda. Thus, Grand Vehicle has established

---

[8] Defendants argue that the personal interest exception does not apply because, although they were Grand Vehicle officers, they did not have substantial ownership interests in the company. Defendants miss the point. Stock ownership is relevant to determine whether a nonresident defendant stood to personally gain by actions that he took on behalf of the corporation. *Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines, Inc.*, 254 F. Supp. 2d 1028, 1037-38 (N.D. Ill. 2003). Grand Vehicle does not allege that Defendants owned enough stock such that they had "a personal stake in the financial success of the corporation that employs them." *Plastic Film Corp. of America, Inc. v. Unipac, Inc.*, 128 F. Supp. 2d 1143, 1146-47 (N.D. Ill. 2001). Rather, Grand Vehicle alleges that Defendants' personal motivation stems from the fact that they represented their own interests in transactions in which Grand Vehicle was a separate party.

that Defendants agreed to perform their obligations under the agreement at least partially in Illinois.

## CONCLUSION

Taking all allegations in Grand Vehicle's complaint as true, as the Court must, the Court finds that Defendants' minimum contacts with Illinois satisfy due process. The case arises out of Defendants' contacts with Illinois, and Defendants' connections to Illinois through at least its tortious conduct and its contractual relations are substantial enough that Defendants "should reasonably anticipate being haled into court there." *World-Wide Volkswagen*, 444 U.S. at 297, 100 S. Ct. at 567. Accordingly, the Court has personal jurisdiction over Defendants, and Defendants' motion to dismiss is denied.

Dated: April 5, 2004

ENTERED

_____
AMY J. ST. EVE
United States District Court Judge